UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID H. BIBLER,**

    **Plaintiff,**

    Case No. 2:17-cv-134

v.

    **CHIEF JUDGE EDMUND A. SARGUS, JR.**
    Magistrate Judge Kimberly A. Jolson

**UNITED STATES OF AMERICA,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (*Def. Mot. S.J.*, ECF No. 12). Plaintiff has filed a Memorandum in Opposition to Defendant's motion (*Pl. Mem. Op.*, ECF No. 16), to which Defendant has filed a Reply (*Reply*, ECF No. 17). The matter is ripe for consideration.

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting

Fed.R.Civ.P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Factual Background

In considering a motion for summary judgment, the Court must consider the evidence in the light most favorable to the nonmoving party. The facts set forth below are taken from the affidavit and memorandum in opposition proffered by the Plaintiff, Mr. Bibler ("Plaintiff" or "Mr. Bibler").

Excel Academy was an Ohio nonprofit, tax exempt organization, a private school licensed by the state of Ohio that "served children who were behaviorally and emotionally challenged and who could not sit in normal classrooms." (*Bibler Aff.*, ECF No. 15, ¶¶ 1,2; *Pl. Mem. Op.*, ECF No. 16, at p. 2.) Mr. Bibler, the Chief Executive Officer of the Licking County Aging Program, was appointed to the Board of Directors of Excel Academy by Judge Branstool of the Licking County Court of Common Pleas, after the former Executive Director and founder

of the school, and her husband and son, were indicted for "violation of Ohio's charitable bingo law by paying workers from charitable bingo funds." (*Pl. Mem. Op.*, ECF No. 16, at p. 2.)

Mr. Bibler agreed to serve as a volunteer Board member, and the Board elected him Treasurer of the Board of Directors. (*Id.*) "No member of the Board, including David Bibler, was responsible for the day-to-day operations of Excel Academy." (*Id.*) "Day-to-day operations fell to Chief Executive Officer Amber Thorne-Hamilton and her staff of administrative personnel, teachers, and staff." (*Id.*) Mr. Bibler "had the authority to sign or co-sign checks." (*Bibler Aff.*, at ¶ 8.) It is not disputed that, "[a]s Treasurer of the Board, David Bibler signed or co-signed checks that were presented to him by Amber Thorne-Hamilton or her assistant, Della Stuart." (*Pl. Mem. Op.*, ECF No. 16, at p. 3.) "[N]either David Bibler nor any other Board member had the responsibility to determine who [sic] to pay or which bills required delayed payment. These decisions fell to the Chief Executive Officer." (*Id.*) "Payroll was handled by the chief Executive Officer and her staff. Financial reports were prepared by the Chief Executive Officer and her staff and presented at meetings." (*Bibler Aff.*, at ¶ 7.) "The preparation and filing of Internal Revenue Service forms and returns belonged to Amber Thorne-Hamilton and her assistants." (*Id.*, at ¶ 9.)

The school fell behind in its payment of employee payroll taxes for the quarterly tax period that ended on December 31, 2011. "It was not David Bibler's responsibility to file such payroll tax returns. The record indicates that the Board of Directors was made aware that the payroll taxes were owed for the 4th quarter of 2011 at a Board meeting of October 17, 2012. This report was made by Chief Executive Officer Amber Thorne-Hamilton or her assistant Della Stuart." (*Id.*) The President of the Board "specifically instructed and directed Amber Thorne-Hamilton to pay the tax." (*Id.*, at ¶ 11.) Plaintiff "understood that Amber Thorne-Hamilton was

in communication with [the] Internal Revenue Service and was making installments on the 4th quarter 2011 tax liability." (*Id.*)

However, Mr. Bibler was also assessed liability for these taxes. He "disputed liability under Section 6672 of the Internal Revenue Code" and contended that he was "not a liable person required to collect, account for, and pay over payroll and/or withholding taxes for Excel Academy." (*Id.*, at ¶ 14.) He "paid the tax for one employee for each quarter of liability that [he] contested and then filed a claim for refund using IRS Form 843. Upon denial, [he] then filed suit for refund" in this Court. (*Id.*, at ¶ 15.) In late 2015, Mr. Bibler entered into an installment agreement with the Internal Revenue Service ("IRS") and "made payments of $100 per month under protest in order to avoid collection." (*Id.*, at ¶ 16.) Excel Academy closed in 2013. (*Pl. Mem. Op.*, ECF No. 16, at p. 3.)

Defendant United States offers additional undisputed facts. It is not disputed that, while Plaintiff was serving as Treasurer, Excel Academy failed to file its Form 941, Employer's Quarterly Federal Tax Return, for the fourth quarter of 2011 that was due January 31, 2012. (*Def. Mot. S.J.*, ECF No. 12-1, at p. 2.) "Based on Excel Academy's filed Form 941, on October 8, 2012, the IRS assessed Excel Academy $30,206.36 in Form 941 taxes, plus interest and various penalties." (*Id.*, at p. 3) "By October 17, 2012, Bibler and the rest of Excel Academy's Board of Directors knew that Excel Academy owed the IRS approximately $32,000 . . . for payroll taxes from October to December 2011." (*Id.*) Additionally, "[a]t a board meeting held on October 17, 2012, the board was presented with a report providing that '[t]he IRS is due $34,959.06 for taxes due from 10/13-12/23/11." (*Id.*) Mr. Bibler and "one or more other responsible persons made payments towards the assessment." (*Id.*)

It is undisputed that, after receiving the information that Excel Academy's payroll taxes were in arrears, Mr. Bibler continued to sign checks as Treasurer making payments to creditors other than the IRS.

> 16. Between October 17, 2012 (when he indisputably knew of Excel Academy's unpaid tax liability) and July 15, 2013 (when he last signed a check on behalf of Excel Academy), Bibler signed or cosigned 134 checks, which totaled payments of $137,698.25 to creditors other than the IRS. (*See* Ex. 3; Ex. 4; Ex. 10; Ex. 12, at 5.)
>
> 17. Bibler signed 44 of those 134 checks by himself, and those 44 checks totaled payments of $51,164.94 to creditors other than the IRS. (*See* Ex. 13.)

(*Def. Mot. S.J.*, ECF No. 12-1, at p. 3.) On November 3, 2014, the IRS assessed a Trust Fund Recovery Penalty ("TFRP") against Mr. Bibler.[1] (*Id.*)

Mr. Bibler filed suit, seeking a refund of $250.00 that he paid toward the TFRP penalty, and for "judgment that he was not a responsible party required to collect, withhold, and/or pay over income and Federal Insurance Contribution Act taxes for Excel Academy, for the quarterly period ended December 31, 2011, as alleged in Plaintiff's claim for refund, and that all assessments for the said quarterly tax period be abated." (*Compl.*, ECF No. 1, at p. 3.)

### B. 26 U.S.C. §6672

Employers are required to withhold taxes from the wages of their employees, and these sums are held in trust until they are paid over to the federal government. *Bell v. United States*, 355 F.3d 387, 388 (6th Cir. 2004). In *Bell*, the Sixth Circuit described the trust fund tax liability scheme:

> The Code requires most employers to withhold Social Security, Medicare, and federal income taxes from their employees' wages. *See* 26 U.S.C. §§ 3102, 3402.

---

[1] "As of October 2017, the TFRP assessed against Bibler has been fully repaid by his and other responsible persons' payments." (*Def. Mot. S.J.*, ECF No. 12-1, at p. 3.)

Section 7501 provides that the withheld money is held in trust for the United States until paid to the Treasury on a quarterly basis. 26 U.S.C. § 7501(a); *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). The withholding taxes "are part of the wages of the employee, held by the employer in trust for the government"; the employer, as a function of administrative convenience, extracts money from a worker's paycheck and briefly holds that money before forwarding it to the IRS. *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987). A delinquency in trust fund taxes thus is not simply a matter between the IRS and an employer, but rather involves employee wages. The significant responsibility of Dyac or any other employer is summed up by then-Judge Cardozo's famous statement that "[a] trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928).

Thus, it should come as no surprise that Congress created a rigorous penalty for those who fail to remit the withheld trust fund taxes to the government. Section 6672(a) provides that "any person" who is required to collect the taxes and willfully fails to pay them over to the government is *personally* liable for 100% of the delinquent taxes. 26 U.S.C. § 6672(a). The statute's punitive nature comes not from an increased monetary penalty, as the responsible party is not liable for an amount that is higher than the delinquent tax balance, but rather from personal, as opposed to corporate, liability. Section 6672 thus exists "to protect the government against losses by providing it with another source from which to collect the withheld taxes." *Gephart,* 818 F.2d at 473; *see also Bolding v. United States,* 215 Ct.Cl. 148, 565 F.2d 663, 669 (Ct.Cl.1977) ("Congress has allowed the IRS more stringent protective devices to insure collection of payroll taxes than in the case of many other taxes.").

*Bell*, 355 F.3d at 392-93.

Failure to forward these "trust fund" taxes to the government is a violation of section 6672(a) of the Internal Revenue Code ("Code"), 26 U.S.C. §6672(a). The pertinent sections of 26 U.S.C. §6672 provide:

**(a) General rule**
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

. . .

**(e) Exception for voluntary board members of tax-exempt organizations**
No penalty shall be imposed by subsection (a) on any unpaid, volunteer member of any board of trustees or directors of an organization exempt from tax under subtitle A if such member—

**(1)** is solely serving in an honorary capacity,

**(2)** does not participate in the day-to-day or financial operations of the organization, and

**(3)** does not have actual knowledge of the failure on which such penalty is imposed.

The preceding sentence shall not apply if it results in no person being liable for the penalty imposed by subsection (a).

26 U.S.C. §6672(a), (e).

Section 6672(a) provides that "any person" who willfully fails to account for and pay over its employees' withholding taxes shall be liable for the full amount not paid over to the government. *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987). The IRS has explained in a 1984 Revenue Ruling that a volunteer member of a board of trustees can be such a person. "The fact that a trustee is a volunteer member of the board of trustees does not in and of itself mean the trustee will or will not be deemed liable. The trustee's liability depends on whether he or she is found to meet the tests of responsibility and willfulness under section 6672 of the Code." Rev. Rul. 84-83 (IRS RRU), 1984-24 I.R.B. 13, 1984-1 C.B. 264, 1984 WL 262648.

Plaintiff asserts that he was "not a person responsible to collect, truthfully account for, and pay over such tax." (*Pl. Mem. Op.*, ECF No. 16, at p. 1.) He further asserts that "he did not willfully attempt in any manner to evade or defeat any such tax." (*Id.*)

7

## III. DISCUSSION

In this tax refund claim case, "the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis*, 428 U.S. 433, 440 (1976). "This burden entails proving, by a preponderance of the evidence, that he was not a responsible person who willfully failed to pay over the withheld taxes." *Bell*, 355 F.3d at 393.

### A. Responsible Person

"Responsibility for purposes of section 6672 is a matter of status, duty, and authority." *Gephart*, 818 F.2d at 475 (citing *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir. 1979). The determination of who is the person under a duty to collect, account for, and pay over the employment and withholding taxes for wages paid to employees is especially dependent upon the facts of the case. *See United States v. Graham*, 309 F. 2d 210 (9th Cir.1962). Whether a person is a person responsible for paying over such taxes to the government under section 6672 is a question that focuses on "the degree of influence and control which the person exercised over the financial affairs of the corporation, and specifically, disbursements of funds and the priority of payments to creditors." *Gephart*, 818 F.2d at 473. In determining whether a person is responsible for the payment of withholding taxes, courts have considered several factors, "such as the duties of the officer as described in the corporate by-laws and the ability of the individual to sign checks for the corporation."[2] *Id*.

The duties of the Treasurer of Excel Academy's Board of Directors were set forth in its Code of Regulations, as follows:

---

[2] The case at bar is distinguished from the factual scenario in *Bell*, inasmuch as both parties had conceded that Bell was a responsible party.

8

The Treasurer shall:

1. Oversee preparation and distribution of financial audits by an accountant or financial professional.
2. Make sure all the Board's financial policies are being followed.
3. Give regular reports to the Board as to the financial health of the organization[.]
4. Chair the finance committee.
5. Assist in the preparation of the budget.
6. Review financial documents of the organization.
7. Other duties and powers as may be assigned to or vested in him/her by the Board of Directors.

(ECF No. 12-7, Ex. 5, at Art. XII.)

Upon review of this list of duties, it does not appear that signing checks was specifically designated as part of the treasurer's responsibilities. It therefore must have been one of the "[o]ther duties and powers" "assigned to or vested in him/her by the Board of Directors." Furthermore, Mr. Bibler attests that "Payroll was handled by the Chief Executive Officer and her staff." (*Bibler Aff.*, ¶ 7.) Nor was he responsible for "signing or filing Form 941 or Form 940 for Excel Academy." (*Id.* at ¶ 9.) He further attests that

> 9. . . . I had no duty to, and did not, oversee the employees, collect payroll information, compile payroll information, or remit payroll information to the payroll service on behalf of the corporation or to Internal Revenue Service. The preparation and filing of Internal Revenue Service forms and returns belonged to Amber Thorne-Hamilton and her assistants. I prepared no financial statements. The Board of Directors reviewed various statements of a financial nature at board meetings.

(*Id.*)
> 10. I did not make decisions as to what bills were to be paid and those bills for which payment might require a delay. These decisions were those of the Chief Executive Officer. The board was told at a meeting in October, 2012 (based on records reviewed), that the Form 941 was not filed for Excel Academy's 4th quarter of 2011 and the tax was not paid. This was the only quarter, to my knowledge, with unpaid payroll taxes.

(*Bibler Aff.*, at ¶ 10.) Thus, the question of whether Mr. Bibler was, indeed, a responsible person is at issue. Under the exception for voluntary board members of tax-exempt organizations under

9

26 U.S.C. §6672(e), it appears that Mr. Bibler has met the first two prongs of the test, in that he has provided evidence to show: (1) that he was serving solely in an honorary capacity, and (2) that he did not participate in the "day-to-day or financial operations of the organization." However, the exception requires a third prong, that the person "(3) does not have actual knowledge of the failure on which such penalty is imposed." As stated in paragraph 10 of Mr. Bibler's affidavit, the board was told that the tax was not paid, confirming that Mr. Bibler had actual knowledge. Thus, for the sake of this motion, the Court will assume, *arguendo*, that Mr. Bibler was a responsible person. However, this factor is not dispositive of the issue, for, as the Sixth Circuit explained in *Byrne v. United States*, 857 F.3d 319 (6th Cir. 2017), the test is "conjunctive." *Id.* at p. 327. "Attaining the status of a 'responsible person' does not . . . encompass strict liability for a company's tax delinquency." *Id.*, citing *Michaud v. United States*, 40 Fed.Cl. 1, 23 (1997); *see also Byrne I*, 498 Fed.App'x. at 560–61 (explaining that taxpayers are not liable under § 6672(a) unless their failure to pay trust-fund taxes was willful).

### B. Willful Failure

Defendant asserts that "all that is necessary to demonstrate willfulness is the existence of an intentional act to pay other creditors before the federal government." (*Def. Mot. S.J.*, ECF No. 12, at p. 6, citing *Bell*, 355 F.3d at 393.) Defendant further asserts that "[l]iability under § 6672(a) is triggered by 'proof of a responsible person's knowledge of payments to other creditors and awareness of the failure to pay the trust fund taxes.'" (*Id.*)

In *Byrne*, the Sixth Circuit examined the requirements for "willful failure," and explained that a responsible person will be found liable under § 6672(a) if the government can demonstrate actual knowledge or reckless disregard for known risks that the taxes were not paid.

> A responsible person will be found liable under § 6672(a) if the government can demonstrate that he had either (1) actual knowledge that the trust-fund taxes were

10

not paid and the ability to pay the taxes, or (2) recklessly disregarded known risks that the trust-fund taxes were not paid. In other words, for a responsible person to be deemed to have acted willfully under § 6672(a), he must have either "had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government," *Gephart*, 818 F.2d at 475 (citation omitted), or "deliberately or recklessly disregarded facts and known risks that the taxes were not being paid," *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir. 1986). In describing actual knowledge, we have held:

> A responsible person who first becomes aware of a past due withholding tax liability after the liability has accrued is considered willful (for purposes of section 6672) if he fails to use all unencumbered funds that come into his possession thereafter to pay the delinquent taxes. Funds are considered encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and [the] legal obligation is superior to the interest of the IRS in the funds.

*Huizinga v. United States*, 68 F.3d 139, 145 (6th Cir. 1995) (quoting *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir. 1992)) (internal quotation marks omitted).

*Byrne*, 857 F.3d at 327.

### C. "Reasonable Cause" Exception

Mr. Bibler has produced evidence to show that he signed checks and co-signed checks at the behest of the CEO, and that he had no duty or authority to sign or file tax forms for Excel Academy. He "had no duty to, and did not, oversee the employees, collect payroll information, compile payroll information, or remit payroll information to the payroll service on behalf of the corporation or to Internal Revenue Service." (*Bibler Aff.*, at ¶ 9.) Furthermore, he "did not make decisions as to what bills were to be paid and those bills for which payment might require a delay. These decisions were those of the Chief Executive Officer." (*Id.* at ¶ 10.) Additionally, Mr. Bibler averred that the Board directed the CEO to pay the trust fund taxes as soon as the Board learned that the taxes were behind a quarter, and he believed the CEO contacted the IRS and was paying the taxes as directed.

The government asserts that, after the Board had been advised that trust fund taxes had not been paid for the 4th quarter, Mr. Bibler was negligent in signing the checks put before him to pay any obligations other than the trust fund taxes owed by the school. However, the question becomes whether continuing to sign the checks was willful conduct, when he believed that the taxes were being paid by the CEO, as the Board had instructed her to do, immediately upon learning of the deficiency.

In *Byrne*, the Sixth Circuit considered a case where otherwise responsible individuals hired a professional accounting firm and believed that trust fund taxes were being paid. The Court noted that

> It is true that "section 6672(a) does not have a reasonable cause exception," *Brewery v. United States*, 33 F.3d 589, 593 (6th Cir. 1994), but to hold a responsible person liable when he or she reasonably believed taxes were being paid would be to engulf conduct that Congress, in requiring "willfulness," never intended to be covered by the law. See *Slodov*, 436 U.S. at 254, 98 S.Ct. 1778 ("The fact that the provision imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault.").

*Byrne*, 857 F.3d at 334, n. 6. After considering the decisions of its sister circuits, the Sixth Circuit in *Byrne* adopted the Second Circuit's "reasonable cause" exception:

> Having reviewed the precedents of our sister circuits, we reiterate our previous holding that a responsible person is reckless and therefore willful under § 6672(a) when he disregards obvious or known risks that trust-fund taxes are not being paid to the Treasury and fails to investigate. See *Calderone*, 799 F.2d at 259–60. However, we must balance the government's prerogative to recover that which is owed with limiting liability for that recovery to those who are personally at fault. See *Collins v. United States*, 848 F.2d 740, 741–42 (6th Cir. 1988). *For this reason we now adopt the Second Circuit's "reasonable cause" exception to § 6672(a) liability, such that "a responsible person's failure to cause the withholding taxes to be paid is not willful if he believed that the taxes were in fact being paid, so long as that belief was, in the circumstances, a reasonable one." Winter*, 196 F.3d at 345 (citations and alteration omitted). That is, if a responsible person can demonstrate by a preponderance of the evidence that he reasonably believed that trust-fund taxes were being paid, he will not be liable under § 6672(a). This narrow exception will not permit responsible corporate officers to

evade liability simply because they compartmentalized responsibilities and adopted a "hear-no-evil-see-no-evil" policy. Rather, this exception limits liability to those who, under the circumstances, failed to take reasonable steps to ensure payment of trust-fund taxes after having received notice that those taxes were not being paid.

*Id.* at pp. 328-29 (emphasis supplied). In adopting this narrow exception, the Sixth Circuit stated:

> We share the IRS's concern that Congress intended for § 6672 "to protect the government against losses." *Gephart*, 818 F.2d at 473, but we must balance this goal against the unfairness of imposing too strict a rule of liability. Here, the government has successfully argued that Byrne and Kus were negligent. But, based on our review of the record, we are convinced that Byrne and Kus have met their burden in demonstrating that their negligence in believing that Eagle Trim's trust-fund taxes were being paid for the third and fourth quarters of 2000 did not rise to the level of recklessness.

*Byrne*, 857 F.3d at 334.

In view of the Sixth Circuit's adoption of the "reasonable cause" exception, the Court must consider whether Mr. Bibler has produced sufficient evidence to raise a genuine issue of material fact to support a reasonable belief that the "taxes were in fact being paid." In the case *sub judice*, Mr. Bibler attests that he understood that the Chief Executive Officer, who had been specifically instructed by the President and all of the members of the Board to pay the tax, was "in communication with Internal Revenue Service and was making installments on the 4th quarter tax liability in November and December of 2012, within two months of assessment and in 2013." (*Bibler Aff.*, at ¶ 11.)

The evidence in the record does not contradict Mr. Bibler's stated belief. Considering all of the evidence in the light most favorable to Mr. Bibler, the Court concludes that he has provided evidence sufficient to raise a genuine issue of material fact concerning whether his conduct meets the Sixth Circuit's "reasonable cause" exception.

13

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Defendant's Motion for Summary Judgment (*Def. Mot. S.J.*, ECF No. 12) is **DENIED**.

**IT IS SO ORDERED.**

4-23-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**